IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 2 0 2003

| | | |
|---|---|---|
| GREENWICH INDUSTRIES, L.P. d/b/a CLARIN, | ) | **MICHAEL W. DOBBINS** |
| | ) | **CLERK, U.S. DISTRICT COURT** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 5000 |
| | ) | |
| SPECIALIZED SEATING, INC. and | ) | ~~Magistrate Judge Levin~~ |
| DON SANDERFUR. | ) | |
| | ) | **Honorable Judge Conlon** |
| Defendants, | ) | |

## NOTICE OF MOTION

TO: **VIA FACSIMILE 312/577-7007**
Karl R. Fink
Fitch Even Tabin & Flannery
120 South LaSalle Street
Suite 1600
Chicago, IL 60603

PLEASE TAKE NOTICE that on the 27th day of February, 2003, at 9:00 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Conlon, or any Judge sitting in her stead, in the courtroom usually occupied by her, Room 2325, at the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and then and therewith present a Motion for Summary Judgment, a copy of which is attached hereto and herewith served upon you.

Anthony S. DiVincenzo

DiVincenzo Schoenfield Swartzman
33 North LaSalle Street - Suite 2900
Chicago, IL 60602
(312) 334-4800

DOCKETED
MAR 0 3 2003

## CERTIFICATE OF SERVICE

I, ANTHONY S. DiVINCENZO, an attorney, being duly sworn on oath depose and state that I caused a copy of the foregoing Notice of Motion and Motion for Summary Judgment, to be served via U.S. Mail, with proper postage prepaid, and via facsimile transmission (312/577-7007) on the above counsel of record on or before the hour of 5:00 p.m. this 20th day of February, 2003.

Anthony S. DiVincenzo

UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 2 0 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

GREENWICH INDUSTRIES, L.P., d/b/a CLARIN, )
)
)
Plaintiff, )
)
v. )
)
SPECIALIZED SEATING, INC., and )
DON SANDERFUR. )
)
Defendants. )

No. 02 C 5000

Honorable Suzanne B. Conlon

Magistrate Judge Ian H. Levin

## MOTION FOR SUMMARY JUDGMENT

NOW COME defendants, Specialized Seating, Don Sanderfur and Alfred Hergott, by and through their attorney and move this Court to enter summary judgment against plaintiff on Counts i through IV of the Amended Complaint. In support of this Motion defendants submit a memorandum of law and a statement of uncontested fact.

Dated: February 20, 2003

Respectfully submitted,



Attorney for defendants

DiVincenzo Schoenfield Swartzman
33 North LaSalle St.
29th Floor
Chicago, IL. 60602



DOCKETED
MAR 0 3 2003

UNITED STATES DISTRICT COURT **F I L E D**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 2 0 2003

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | |
|---|---|
| GREENWICH INDUSTRIES, L.P., d/b/a CLARIN, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 02 C 5000 ) |
| SPECIALIZED SEATING, INC., and DON SANDERFUR. | ) Honorable Suzanne B. Conlon ) ) |
| Defendants. | ) Magistrate Judge Ian H. Levin ) |

MAR 0 3 2003

### MEMORANDUM IN SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

This action is grounded upon Plaintiff's, Greenwich Industries, baseless claim that

defendants, Specialized Seating, Don Sanderfur and Al Hergott can not sell a folding chair

using some features of plaintiff's "B" Back folding chair because plaintiff's folding chair is

protected trade dress. This claim flies in the face of the established legal principle that

articles in the public domain "may be made and sold by whoever chooses to do so." *Sears*

*v. Stiffel*, 376 U.S. 973 (1964). Here, as a matter of law and indisputable fact, the elements

of the plaintiff's folding chair incorporated in Specialized Seating's folding chair are

functional and not subject to protection under the law. For that reason, defendants are

entitled to summary judgment.

### I. The Background Facts

Beginning in the 1920's, a folding chair utilizing double tube and channel steel with

an X frame design was sold by Clarin or one of its predecessors (Rule 56.1(a)(3)

Statement at Par. 1). Double tube and channel steel is a flat piece of steel which has its

sides rolled over to form what appears to be two tubes with a flat channel in between (Rule

56.1(a)(3) Statement at Par. 2). An X frame is a frame whose front and back legs cross below the seat (Rule 56.1(a)(3) Statement at Par. 3).

The X frame chair sold by Clarin was protected by at least two now expired U.S. Patents. The first patent, No.1,600,248, was issued in 1926. That patent claimed an invention for a folding chair that folded flat with its back legs folding inside the front legs (Rule 56.1(a)(3) Statement at Par. 4). On the other hand, with a standard Y frame folding chair, where the legs meet above the seat, the legs fold directly on top of one another (Rule 56.1(a)(3) Statement at Par. 5). The '248 Patent included a drawing which disclosed a double tube and channel X frame chair (Rule 56.1(a)(3) Statement at Par. 5).

The second U.S. Patent, No. 1,943,058, (the '058 Patent), claimed an invention whereby the chair would collapse automatically on falling to the floor (Rule 56.1(a)(3) Statement at Par. 6 ). This automatic collapsing feature was a significant safety advantage in case of an emergency (Rule 56.1(a)(3) Statement at Par. 7). A standard Y frame chair does not collapse automatically on falling to the floor (Rule 56.1(a)(3) Statement at Par. 8). The '058 Patent included a drawing which disclosed a double tube and channel X frame chair (Rule 56.1(a)(3) Statement at Par. 6).

The back design of the Clarin chair has evolved over time in response to the needs of its customers (Rule 56.1(a)(3) Statement at Par. 9 ). The original rounded backs shown in the '248 and '058 Patents were modified into an offset shape called the "A" Back in response to the need for a wider chair (Rule 56.1(a)(3) Statement at Par. 10).

In or about 1987, Clarin began receiving complaints that the back of its "A" Back chair was collapsing at concert venues (Rule 56.1(a)(3) Statement at Par. 11). Clarin discovered that concert attendees were sitting on the backs with their feet on the seats

-2-

(Rule 56.1(a)(3) Statement at Par. 11). The "A" Backs would bend and collapse under the person's weight (Rule 56.1(a)(3) Statement at Par. 11). The bending was occurring at the point of the offset in the "A" Back (Rule 56.1(a)(3) Statement at Par. 11).

To correct this potentially dangerous condition, Clarin initially devised a short term solution which consisted of a formed metal strip which was welded into the channel configuration of the offset in the "A" Back (Rule 56.1(a)(3) Statement at Par. 12). As a long term design solution, Clarin designed an improved back called the "B" Back (Rule 56.1(a)(3) Statement at Par. 12). Clarin eliminated the offset, the weak spot where the bending was occurring, by slanting the top of the sides inward (Rule 56.1(a)(3) Statement at Par. 12). This improved design distributed the weight through the sides and strengthened the back (Rule 56.1(a)(3) Statement at Par. 12).

In or about 1993, Greenwich Industries acquired Clarin (Rule 56.1(a)(3) Statement at Par. 13). Shortly thereafter, Al Hergott and his father, Harvey Hergott, who had been employed at Clarin started AOH International (Rule 56.1(a)(3) Statement at Par. 13). AOH began competing with Clarin in the folding chair market (Rule 56.1(a)(3) Statement at Par. 13). AOH sold both X frame and Y frame chairs (Rule 56.1(a)(3) Statement at Par. 13). The X frame chairs sold by AOH were manufactured by Frank Lin in Taiwan (Rule 56.1(a)(3) Statement at Par. 13). AOH sold X frames double tube and channel chairs beginning in 1994 to venues such as the United Center (Rule 56.1(a)(3) Statement at Par. 13).

In 1994, Clarin sued Harvey Hergott in State court on several grounds including breach of fiduciary duty (Rule 56.1(a)(3) Statement at Par. 14). Interestingly, no claim was made that AOH was infringing any trademark or trade dress rights belonging to Clarin.

-3-

Clarin's request for a preliminary injunction was denied (Rule 56.1(a)(3) Statement at Par. 14). However, on September 13, 1996 during trial, a settlement was reached (Rule 56.1(a)(3) Statement at Par. 14). Pursuant to this settlement, AOH, Harvey Hergott and Al Hergott agreed not to compete with Clarin in the double tube and channel X frame chair market (Defendants 12(M) Statement at Par. 14). Al Hergott and Harvey Hergott complied with this covenant (Rule 56.1(a)(3) Statement at Par. 15). However, Frank Lin, who was not a party to the settlement, continued to produce the same X frame chairs (Rule 56.1(a)(3) Statement at Par. 15).

After the five year covenant not to compete expired, Al Hergott and his company Specialized Seating were presented with the opportunity to offer X frame chairs (Rule 56.1(a)(3) Statement at Par. 16). Sales of the X frame chairs began in 2002 (Rule 56.1(a)(3) Statement at Par. 16). The chairs offered by Specialized Seating incorporated a double tube and channel X frame design with a back similar to the "B" Back design (Rule 56.1(a)(3) Statement at Par. 17). However, Specialized Seating's chairs differed from Clarin's "B" Back chair in several key respects (Rule 56.1(a)(3) Statement at Par. 17). Specialized Seating's chairs used different leg braces, different ganging devices and a different seat design (Rule 56.1(a)(3) Statement at Par. 17). Shortly after Specialized Seating began offering its X frame chairs for sale, plaintiff began sending letters to Specialized Seating's potential customers claiming trade mark rights in the design of the X frame chair (Rule 56.1(a)(3) Statement at Par. 18).

## II. **Argument**

Summary judgment is proper when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. *Kamler v. H/N*

*Telecom. Servs., Inc.*, 305 F.3d 672, 677 (7th Cir. 2002). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets that burden, the non-movant must set forth sufficient specific facts demonstrating the existence of an issue of material fact. *id.* More than a scintilla of evidence is needed. *Anderson, supra* at 250.

## A. Plaintiff's "B" Back Chair is not Entitled to Trade Dress Protection

It is fundamental that "[s]haring in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all–and in the free exercise of which the consuming public is deeply interested." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 122 (1938). It is against this background that trade dress protection must be viewed. "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products."*Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). As the Supreme Court stated: "copying is not always discouraged or disfavored by the laws which preserve our competitive economy." *id.*, at 29. Here, plaintiff is not entitled to trade dress protection.

### 1. The Functionality of the "B" Back Chair Bars Protection.

In order to establish that it is entitled to trade dress protection for the "B" Back chair, plaintiff must prove that each product feature for which protection is sought is not functional. *Traffix Devices, supra* at 29. Functionality of a product feature is an absolute

bar to a claim of trade dress protection for that product feature. Even if that functional feature has acquired secondary meaning, it is not entitled to protection. The Supreme Court in *Traffix Devices* unequivocally adopted "the rule that functional features may not be the subject of trade dress protection". *id.*, at 35. A feature is functional if it is essential to the use or purpose of the product or when it affects the cost or quality of the product. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850, n. 10 and *Traffix Devices*, supra at 32-33.

In this case, plaintiff can not prove that the features of the "B" Back chair are not functional. First, the double tube and channel X frame design of the "B" Back chair were fully disclosed in the '248 and the '058 patents. The disclosure of a product feature in a patent is strong evidence of functionality., *supra* at 29-30. The Supreme Court fully explained:

> A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that the features are deemed functional until proved otherwise by the party seeking trade dress protection.

*id.* The Court had much earlier stated that a patent holder may not extend the legal monopoly afforded by the patent by using the trademark law to register any trademark based on "any descriptive matter appearing in the specifications, drawings or claims of the expired patent, whether or not such matter describes essential elements of the invention or claims." *Scott Paper Co. v. Marcalus Co.*, 326 U.S. 249, 256 (1945).

Second, even if disclosure in the expired patents was not sufficient to bar a claim of non-functionality, the admissions of plaintiff establish that the product features of the "B"

-6-

Back chair for which trade dress protection is claimed are functional. It appears that Clarin is claiming that the X frame, the double tube and channel and the shape of the "B" Back are each elements of its design. Each of these elements are functional in that they enhance the quality of the chair.

The record establishes that the X frame design has advantages over the Y frame design. X frame chairs collapse automatically if pushed over, either forward and backward. Y frame chairs do not collapse in both directions. The ability to collapse is a significant safety feature in auditoriums, arenas, and other venues (Rule 56.1(a)(3) Statement at Par. 6-8).

In addition, the X frame design allows the chair to fold flat within its frame. The Y frame design does not fold within the frame. This folding feature gives the X frame a significant advantage in terms of storage space (Rule 56.1(a)(3) Statement at Par. 4-5).

The quality of a folding chair is enhanced by the double tube and channel X frame design (Rule 56.1(a)(3) Statement at Par. 29-34. The plaintiff's product brochure admits that a double tube and channel frame " provides unmatched strength, durability, and flexibility and the channel also provides flat surfaces ideal for steel rivets" (Rule 56.1(a)(3) Statement at Par. 19). Second, the product brochure mentions that the chair's X frame construction allows for flex action which allows for level seating on uneven surfaces, but allows for the frame to bounce back to its original shape (Rule 56.1(a)(3) Statement at Par. 20). Plaintiff also admits that the X frame ensures strength "prolonging chair life and enhancing comfort by precisely distributing occupant weight." (Rule 56.1(a)(3) Statement at Par. 21). Lastly, the shape of the "B" Back is the result of Clarin improving the design to correct a design flaw which resulted in collapsed chairs (Rule 56.1(a)(3) Statement at

-7-

Par. 22).

To overcome these facts, Plaintiff appears to be claiming that other competitive chairs could be designed that would have equal quality. Thus, plaintiff claims that the features of its chair are not essential to the functionality of the chair. The courts have now clearly rejected this approach. The existence of alternative designs does not mean that the design is not functional. To establish functionality of a feature, the feature need not be shown to be the best design. _Schwinn Bicycle Co. v. Ross Bicycles, Inc.,_ 870 F.2d 1176, 1189 (7th Cir. 1989). All that must be shown is that the design is one of a few superior designs for its purpose. _W.T. Rogers Co., Inc. v. Keene_, 778 F.2d 334,340 (7th Cir. 1985). In _Keene Corp. v. Paraflex Industries, Inc.,_ 653 F.2d 822, 827 (3rd Cir. 1981) the court found that functionality existed where the shape of a outdoor wall-mounted luminaire was one of twelve or fifteen on the market. Here, only two frame designs for folding chairs are marketed in the commercial market, the X frame and the Y frame. (Rule 56.1(a)(3) Statement at Par. 23).

These cases are fully consistent with _Traffix Devices_. There, the Supreme Court rejected the need to examine possible alternative designs. In _Traffix Devices_, as it should be in the case at bar, the functionality of the product feature was sufficient to bar trade dress protection, although equally functional alternatives were available.

Plaintiff also claims that the whole of the design deserves protection. Again this argument has been squarely rejected by the courts. The Ninth circuit explained that " it is semantic trickery to say that there is some sort of separate 'overall appearance' which is non-functional." _Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,_ 199 F.3d 1009, 1013

(9th Cir. 1999). Similarly in this case, the Clarin "B" Back chair is simply the sum of its functional parts and is not deserving of trademark protection.

## 2. **Plaintiff Has Failed to Establish Secondary Meaning**.

Even if the product features claimed by plaintiff as trade dress were not functional, they would still not be entitled to protection because plaintiff has failed, as a matter of law to establish secondary meaning. The Supreme Court has held that when the trade dress at issue is a product design feature, a claimant must establish secondary meaning to be entitled to protection. *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000). Absent secondary meaning trade dress protection must be denied.

There is secondary meaning when the primary significance of a product feature is to identify the source of the product rather than the product itself. *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159 (1995). In most trade dress cases, product features do not really identify the product or its source, they are the product. *Duraco Products v. Joy Plastics Enterprises, Ltd.*, 40 F.3d 1431 (3rd Cir. 1994). Thus, the real issue is whether the feature's primary significance to the consumer is as an identifier of source or as an element which contributes to the appeal of the product. *Kellogg, supra* at.120.

All plaintiff claims to have established is that users of folding chairs can identify the Clarin chairs by their design. That is not enough. Consumers must also care that the product comes from a specific producer and must desire the product with the feature because it signifies that producer. *Sinko v. Snow-Craggs Corp.*, 105 F.2d 450, 453 (7th Cir. 1939). In *Sinko*, the Court explained that if Sinko created a demand for the product made in a particular way, regardless of producer, the law of unfair competition did not protect the

design against copying. The Court held that Sinko had to create a demand for the product made by Sinko and no other in order for the law to protect the design. Here, none of the evidence establishes that a consumer of folding chairs has a desire for only Clarin chairs as opposed to chairs of a double tube and channel X frame design.

Plaintiff has also produced a consumer survey. That survey simply illustrates the failure of plaintiff to establish secondary meaning in the proper sense. The survey showed consumers several pictures of the "B" Back chair. It then asked the consumer if it identified that chair with a particular supplier. The survey did not establish that the primary significance of any feature was to identify the source. In fact, the survey suffers from the fatal defect that it did not differentiate the product features that were clearly functional from those that were not. A survey which asks consumers to identify the source of a product based on its overall configuration when most of the product's configuration is functional is utterly worthless in determining whether certain features have acquired secondary meaning. *Textron, Inc. v. U.S. International Trade Comm'n,* 753 F.2d 1019, 1027 (Fed. Cir. 1985).

Under these circumstances, plaintiff has failed to come forward with sufficient proof of secondary meaning. For that reason, summary judgment in favor of defendants is warranted.

### B. **Plaintiff Can Not Establish a Likelihood of Confusion**

To establish trade dress infringement in a product design case, a plaintiff must demonstrate both secondary meaning and that the similarity of the defendant's trade dress causes a likelihood of confusion on the part of customers as to the source of the products.

-10-

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 636 (7th Cir. 1999). Factors to be considered include the similarity of the trade dress, the degree of care to be used by consumers, actual confusion, and defendant's intent to pass off its products as those of plaintiff. *id*. In this case, plaintiff can not establish a likelihood of confusion for several reasons.

### 1. The Similarity of Trade Dress.

Here, plaintiff would have the Court believe that plaintiff's and defendant's chairs are identical. They are not. The chairs have different seats, ganging devices and leg braces. (Rule 56.1(a)(3) Statement at Par. 24). These differences are significant in the overall design of the product and can result in the products not qualifying under particular customer's specifications (Rule 56.1(a)(3) Statement at Par. 24).

Moreover, the analysis of similarity does not end with the product configuration itself. As the Seventh Circuit has recognized, consumers do not rely solely on a distinctive configuration as a product identifier. *Syndicate Sales, supra* at 637. Instead, consumers can rely on labeling, packaging and advertising, which are often much less ambiguous, to identify the source of the product.

Here, Specialized Seating does everything it can do to differentiate its chairs from Clarin's. Specialized Seating labels each chair (Rule 56.1(a)(3) Statement at 25). The chairs are shipped to the customer in boxes prominently marked as Specialized Seating. (Rule 56.1(a)(3) Statement at Par. 25). Specialized Seating advertisements in trade publications feature the name Specialized Seating (Rule 56.1(a)(3) Statement at Par. 25). Indeed, Specialized Seating directly deals with customers, often having to submit bids

-11-

which clearly disclose the source of the product. (Rule 56.1(a)(3) Statement at Par. 25). These steps identify the source of Specialized Seating's chairs and dispel any possibility of a likelihood of confusion. Incredibly, Clarin itself relies on such labeling to inform consumers that chairs sold through Clarin's distributors are of Clarin manufacture. (Rule 56.1(a)(3) Statement at 26).

The case of *Bretford Manufacturing, Inc. v. Smith System Manufacturing Company*, 116 F.Supp.2d 951 (N.D.Ill. 2000) is directly on point. There, the first manufacturer of computer tables with v-shaped legs sued a competitor that copied the v-shaped legs. The court granted summary judgment to the defendant on both the issue of secondary meaning and likelihood of confusion. The court found that there were numerous points at which customers could identify the source and ensure that they were purchasing the table of a specific manufacturer. Consequently, there was no likelihood of confusion.

## 2. Degree of Care Used by Consumers.

The courts consider the sophistication of consumers in determining the likelihood of confusion. *Bretford Manufacturing, supra.* Here, there can be no question that the purchasers of the chairs are sophisticated. The primary market for these chairs are large arenas and convention centers. Often, the purchases are made through municipalities. These purchasers are generally knowledgeable concerning the folding chair market (Rule 56.1(a)(3) Statement at Par. 27). In such circumstances, the purchaser is likely to carefully examine the chairs to see if they meet their needs and specifications and are supplied by the preferred supplier. *Bretford Manufacturing, supra.*

-12-

### 3. **Actual Confusion**.

To the best of defendants' knowledge, no customer has ever complained to them or returned chairs because they thought that they had purchased Clarin chairs instead of Specialized Seating's chairs (Rule 56.1(a)(3) Statement at Par. 28). Further, defendants are unaware of any cases of actual customer confusion ( Rule 56.1(a)(3) Statement at Par. 28). Since Specialized Seating has been selling X frame chairs for over one year, if confusion were likely, some actual confusion should have occurred by now.

### 4. **Defendants' Intent**.

At best, plaintiff claims that defendants wilfully copied the Clarin chair and have been selling that copy. This is insufficient to establish an intent to pass off the chairs as Clarin chairs. As noted above, copying is not in and of itself bad. The critical inquiry is whether there was an intent to pass off the chairs as Clarin chairs. *Bretford Manufacturing*, *supra*. Here, no such evidence exists.

Indeed, defendants have done everything they could to establish the Specialized Seating brand. Specialized Seating labels each chair as a Specialized Seating chair. (Rule 56.1(a)(3) Statement at Par 25). The chairs are shipped to the customer in boxes prominently marked as Specialized Seating. (Rule 56.1(a)(3) Statement at Par. 25). Specialized Seating advertisements in trade publications feature the name Specialized Seating. (Rule 56.1(a)(3) Statement at Par. 25). These facts do not allow any reasonable inference of an intent to pass off the defendant's chairs as those of Clarin.

-13-

### 3. The Settlement of the Prior Litigation bars Plaintiff's Claims.

As noted above, this is not the first litigation between Clarin and members of the Hergott family. In 1996 , prior litigation was settled in part by Al Hergott's agreement to refrain from selling X frame chairs for five years. Now that the five year agreement has expired, Al Hergott should be free to sell the X frame chairs. That was the contractual agreement. Plaintiff bargained away any right to bar Al Hergott from selling X frame chairs after the five year period.

Moreover, If plaintiff believed it had the right to bar defendant from selling X frame chairs due to trade dress rights, it was obligated to bring those claims in the prior litigation. A plaintiff can not split its causes of action. _Rein v. David A. Noyes_, 172 Ill.2d 325, 665 N.E.2d 1199 (1996). The failure to bring those claims in the prior state court litigation acts to bar the claims in this case.

### III. Defendants are Entitled to Summary Judgment on the State Law Claims

In Counts II-IV of the Amended Complaint, Plaintiff alleges various state law claims. Because as set forth in the Amended Complaint, each of these claims is premised upon the existence of an infringement of plaintiff's alleged trade dress, the failure of plaintiff to prove its trade dress claim is fatal to these state law claims. As the Supreme Court noted in _Sears v. Stiffel_, 376 U.S. 973 (1964), state unfair competition law can not be used to bar copying a product that federal law allows to be copied. In the absence of a trademark, defendants had the right to copy Clarin's chair.

## IV. Conclusion.

For the above stated reasons, defendants are entitled to summary judgment on the claims brought in this case.

Respectfully submitted,

Anthony S. DiVincenzo

DiVincenzo Schoenfield Swartzman
33 North LaSalle Street
Suite 2900
Chicago, IL 60602
312/334-4800

-15-