Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5000 | **DATE** | 4/8/2003 |
| **CASE TITLE** | GREENWICH INDUSTRIES, d/b/a CLARIN vs. SPECIALIZED SEATING, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The parties' motions for summary judgment [27-1][29-1] are denied. The joint final pretrial order and agreed pattern jury instructions shall be presented on April 30, 2003 at 9:00 a.m. Plaintiff's draft shall be submitted to defendants by April 22, 2003. Trial is set on May 19, 2003 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 0 9 2003 date docketed | |
| | Docketing to mail notices. | | | 40 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/8/2003 | |
| CB | courtroom deputy's initials | 03 APR -8 PM 4:09 | date mailed notice PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREENWICH INDUSTRIES, L.P. d/b/a )
CLARIN, )
 )
                          Plaintiff, )   No. 02 C 5000
 )
v. )   Suzanne B. Conlon, Judge
 )
SPECIALIZED SEATING, INC., ALFRED )
HERGOTT and DON SANDERFUR, )
 )
                        Defendants. )

## MEMORANDUM OPINION AND ORDER

Greenwich Industries, L.P. d/b/a Clarin ("Clarin") sues Specialized Seating, Inc. ("Specialized Seating"), Alfred Hergott ("Hergott") and Don Sanderfur ("Sanderfur") (collectively, "defendants") for trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Count III) and Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 (Count IV) as well as common law unfair competition (Count II). The parties move for summary judgment pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

All facts are undisputed unless otherwise noted. Clarin manufactures and sells seating systems and products, including metal folding chairs. In 1926, Clarin was issued U.S. Patent No. 1,600,248 for a folding chair.[1] In 1934, Clarin was issued U.S. Patent No. 1,943,058 for a folding chair that collapsed automatically. In 1964, Clarin was issued U.S. Patent No. 3,127,218 for folding chairs fastened together in groups. The patents have expired.

---

[1] Clarin's objections to the admissibility of its patents are unfounded. See *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 664 n. 12 (7th Cir. 1995) ("*T&B I*")(court may take judicial notice of patent in a trade dress infringement case).

1

Clarin's current product line includes an "A-back" metal folding chair that has a scalloped or curved back and a "B-back" metal folding chair that has a tapered back. Both chairs have an X-frame design with the front and back legs crossed just below the seat. Clarin began selling its A-back chair in approximately 1925 and its B-back chair in approximately 1987. Since 1993, Clarin's B-back chair has generated revenues in excess of $14 million. Sales of the B-back chair account for approximately 20% of Clarin's total sales over the last ten years. Since 1994, Clarin has spent in excess of $1 million in advertising and marketing expenses in promoting its entire chair line, including the B-back chair. Clarin has filed an application for federal trademark registration of the B-back chair.

Specialized Seating sells seating products. Hergott is the president, owner and sole corporate officer of Specialized Seating. Hergott is responsible for making all decisions for Specialized Seating. Sanderfur works for Specialized Seating as a sales representative.

In 2002, Specialized Seating began selling its X-frame chair. Hergott admits that the appearance of Specialized Seating's X-frame chair is substantially similar to Clarin's B-back chair. Specialized Seating generally offers its X-frame chair at a lower price than Clarin prices its B-back chair. Specialized Seating sells its X-frame chair to customers who previously bought Clarin folding chairs.

As part of this litigation, Clarin commissioned the chairman of the marketing department of Southern Methodist University, Daniel Howard, Ph.D., to survey the primary market in which Clarin and Specialized Seating sell their competing chairs. Dr. Howard surveyed 1,950 U.S. members of the trade association for the parties' primary market by sending them a cover letter, a one page survey containing six questions and three pictures, showing front, side and angle views of Clarin's B-back chair. After screening out recipients who were unfamiliar with the parties' products, the survey asked recipients whether they primarily associate the design of the chair shown in the pictures with: (1) no manufacturer; (2) one manufacturer; or (3) more than one manufacturer. In the returned

surveys, 55.9% indicated that they primarily associate the chair shown in the pictures with one manufacturer and, of those, 79.6% named Clarin as the manufacturer. Out of the 285 recipients who were able to name a single manufacturer, 266 named Clarin while only one named Specialized Seating.

In addition, Clarin retained the president of Livingston Products, Inc., Troy W. Livingston, to consider whether the configuration of Clarin's B-back chair is dictated by functional considerations. In Livingston's opinion, the configuration of Clarin's B-back chair is not dictated by functional considerations.

## DISCUSSION

### I. Standard of Review

On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. *Equal Employment Opportunity Commission v. Admiral Maintenance Service, L.P.*, No. 97 C 2034, 1998 WL 102748, at * 6 (N.D. Ill. Feb. 26, 1998). Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Trade Dress

Trade dress is "the total image of a product," including size, shape, color, textures, graphics and particular sales techniques. *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 636

(7th Cir. 1999). Trade dress includes product design. *Wal-Mart Stores, Inc. v. Samara Bros. Inc.*, 529 U.S. 205, 209-10 (2000). However, "[t]rade dress protection only extends to the role of such features as signifier of source; when competitors are barred from duplicating features whose value to consumers is intrinsic and not exclusively as a signifier of source, competition is unduly hindered." *T&B I*, 65 F.3d at 657. In short, a court considering a trade dress infringement action based on product configuration must consider "whether a product feature's primary significance to consumers is as an identifier of source or as an element which contributes to the inherent appeal of the product." *Id.* at 658.

To establish trade dress infringement, Clarin must prove: (1) its trade dress is primarily non-functional; (2) its trade dress has acquired secondary meaning; and (3) Specialized Seating's trade dress is confusingly similar, engendering a likelihood of confusion in the marketplace. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) ("*T&B II*"); 15 U.S.C. § 1125(a)(3)("person who asserts trade dress protection has the burden of proving the matter sought to be protected is not functional"). Defendants claim Clarin cannot prove the elements of trade dress infringement. The parties agree that Clarin's state law claims hinge on the success of its federal law claim. Pl. Motion at 2; Def. Motion at 14.

### A. Functionality

Defendants argue Clarin cannot establish the product features of the B-back chair are non-functional because they were included in Clarin's expired patents. Clarin responds that functionality may not be shown from evidence that a product configuration was disclosed, but not claimed, in an expired patent. Clarin's argument lacks merit.

The Supreme Court recently addressed the effect of an expired patent on a claim of trade dress infringement:

> A prior patent, we conclude, has vital significance in resolving the trade dress claim. A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory

4

> presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection. Where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29-30 (2001). In deciding functionality, the Supreme Court specifically considered the patent's history, including applications, specifications and statements made during the course of prosecution. *Id.* at 31-32. Indeed, the Supreme Court previously has found:

> By the force of the patent laws not only is the invention of a patent dedicated to the public upon its expiration, but the public thereby becomes entitled to share in the good will which the patentee has built up in the patented article or product through the enjoyment of his patent monopoly. Hence we have held that the patentee may not exclude the public from participating in that good will or secure, to any extent, a continuation of his monopoly by resorting to the trademark law and registering as a trademark any particular descriptive matter appearing in the *specifications, drawings or claims of the expired patent, whether or not such matter describes essential elements of the invention or claims.*

*Scott Paper Co. v. Marcalus Co.*, 326 U.S. 249, 256 (1945)(emphasis added). Clarin does not contend that the B-back chair configuration is undisclosed in the specifications or drawings of the expired patents. Therefore, the expired patents provide strong evidence that the features contained in the patents are functional.

Nevertheless, Clarin may counter this presumption with evidence of non-functionality. Clarin presents proposed expert testimony that the B-back chair configuration is not functional. Whether Clarin's proposed expert testimony can overcome the strong presumption of functionality established by the expired patents is an issue of fact to be resolved at trial. *See T&B II*, 138 F.3d at 300 ("the finder of fact should decide, in light of the other evidence presented, how much weight the ... patent should receive").

### B. Secondary Meaning

Defendants next argue that Clarin cannot establish secondary meaning. A product acquires secondary meaning when "in the minds of the public, the primary significance of [the dress] is to

identify the source of the product rather than the product itself." *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 163 (1995). In determining whether secondary meaning has been established, the court may consider "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992).

Clarin's first claims its advertising establishes secondary meaning. "[A]dvertising which encourages consumers to identify the claimed trade dress with the particular producer is some evidence of secondary meaning." *T&B II*, 138 F.3d at 292, *citing T&B I*, 65 F.3d at 662. Since 1994, Clarin has spent in excess of $1 million in advertising and marketing expenses in promoting its entire chair line, including the B-back chair. Clarin offers evidence that it uses an illustration of the B-back chair in advertising, shipping labels, hangtags, business cards, company invoices, purchase orders, letterhead and signage. Pl. Facts at ¶ 26. As defendants point out, Clarin's advertising does not necessarily indicate that consumers identify the B-back chair with Clarin. *See Spraying Systems*, 975 F.2d at 393 ("evidence of sales, advertising and use is entirely circumstantial, and courts have noted that this type of evidence alone is often insufficient to establish secondary meaning"). Even so, the issue of whether Clarin's advertising convinced consumers is a question of fact that cannot be resolved on summary judgment. *T&B*, 138 F.3d at 292.

Moreover, Clarin offers survey and affidavit evidence showing that consumers associate the B-back chair with Clarin. In response, defendants contend:

> [i]t is not enough that the consumers associate the form of the product with a particular producer. Such an association is inevitable when the first comer is the exclusive producer under a patent. Consumers must also care that the product comes from a particular producer (though they need not be able to identify him) and must desire the product with the particular feature because it signifies that producer.

*T&B I*, 65 F.3d at 658-59. However, the Seventh Circuit later clarified:

> when a trade dress sought to be protected was formerly contained in a patent, evidence establishing secondary meaning must also show that any connection between the trade dress of the product and its producer does not primarily stem from the expired patent. This ensures that there is a true connection between the producer

6

and the product in the minds of consumers, and avoids any problem regarding whether secondary meaning can develop during a period when competition is stifled by some other type of protection.

*T&B II*, 138 F.3d at 294. In *T&B II*, the plaintiff raised an issue of fact as to the existence of secondary meaning independent of the expired patents by presenting evidence that it manufactured its product for over ten years after its patent expired and before any other manufacturer began producing a similar product. *Id.*

Clarin raises an issue of fact by presenting evidence that it manufactured its product for a significant period of time without competition. Although the record does not reveal the exact date Clarin's original patent expired, it is safe to say Clarin manufactured its folding chairs for more than ten years after its last patent expired without competition. Clarin manufactured its B-back chair for at least seven years before Hergott's former company, AOH International, entered the X-frame folding chair market. "Under the Lanham Act, five years' use weighs strongly in favor of secondary meaning." *T&B II*, 138 F.3d at 295.

Defendants' primary reliance on *Sinko v. Snow-Craggs Corp.*, 105 F.2d 450, 453 (7th Cir. 1939), is misplaced. The Seventh Circuit in *T&B II* specifically distinguished *Sinko* based on the timing of the defendant's entry into the market. In *Sinko*, the defendant entered the market less than one year after the plaintiff began manufacturing the product at issue. *T&B II*, 138 F.3d at 293, *citing Sinko*, 105 F.2d at 453. In contrast, the defendant in *T&B II* entered the market 30 years after the product at issue was first introduced and ten years after the patent on the product expired. *Id.* Like the defendants in *T&B II*, defendants entered the market over 75 years after Clarin introduced its A-back chair and at least 15 years after Clarin introduced its B-back chair. As a result, Clarin raises a genuine issue of material fact as to secondary meaning.

### C. Likelihood of Confusion

Finally, defendants claim Clarin cannot establish a likelihood of confusion. In determining the likelihood of confusion, the court may consider a number of factors, including: (1) similarity of

the trade dresses; (2) area and manner of concurrent use; (3) the degree of care likely to be used by consumers; (4) the strength of plaintiff's trade dress; (5) actual confusion; and (6) intent of the defendant to pass off its product as that of the plaintiff. *T&B II*, 138 F.3d at 295. No single factor is dispositive and the court may assign varying weights to each of the factors depending on the facts presented. *CAE Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001). In many cases, the similarity of dress, the defendant's intent and evidence of actual confusion are of particular importance. *Id.* Likelihood of confusion is a question of fact unless the evidence is "so one-sided that there can be no doubt about how the question should be answered." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001), *quoting Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996). Depending on the weight given each factor, a reasonable factfinder could decide in favor of either party on this issue.

**1.     Similarity of Dress**

Defendants concede its X-frame chair is substantially similar to Clarin's B-back chair. Accordingly, this factor weighs in favor of likelihood of confusion.

**2.     Defendant's Intent**

Clarin fails to offer any evidence that defendants intend to pass off its products as Clarin's. To the contrary, defendants' X-frame chairs are clearly labeled as Specialized Seating products. Defendants' advertising identifies Specialized Seating as the manufacturer. This factor weighs against likelihood of confusion.

**3.     Actual Confusion**

One instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion. *CAE*, 267 F.3d at 686, *citing Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir. 1983). To demonstrate actual confusion, Clarin relies on customers' statements to one of its employees. In response, defendants argue that the customers' statements are inadmissible hearsay.

8

It is true that unspecified statements by unknown declarants are inadmissible hearsay. *See, e.g., Smith Fiberglass Products, Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1330-31 (7th Cir. 1993)(actual confusion evidence which lacks "an exact quote or even the identity of the person making the statement" is inadmissible hearsay). However, Clarin provides quotes from three known declarants showing actual confusion. Clarin's employee may testify to the declarants' statements under the state of mind exception to the hearsay rule, subject to an appropriate limiting instruction. Fed. R. Evid. 803(3). Defendant may counter Clarin's evidence by showing that they have not received any complaints of customer confusion. Whether three instances of confusion over a five month period is sufficient to demonstrate a likelihood of confusion is an issue of fact for trial.

4.  **Remaining Factors**

The evidence is split between the parties on the remaining factors. Specifically, Clarin concedes the degree of care used by its consumers weighs in favor of defendants by failing to address the matter in any of its briefs, but Clarin raises a genuine issue of fact as to area and manner of concurrent use and the strength of its trade dress. The parties primarily sell their X-frame folding chairs in the auditorium, arena and convention center market. Indeed, defendants have sold their chairs to former Clarin customers. The strength of Clarin's trade dress is demonstrated by its prolonged continuous use and heavy promotion of its B-back chair and its predecessor, the A-back chair. *See AM General Corp. v. DaimlerCrysler Corp.*, 311 F.3d 796, 828 (7th Cir. 2002). Based on this record, summary judgment must be denied.

## CONCLUSION

Genuine issue of material facts preclude summary judgment on Clarin's trade dress infringement claims. This case must proceed to trial.

April 8, 2003

ENTER:

Suzanne B. Conlon
United States District Judge